UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EQUANZICK HOWELL,

     Petitioner,

v.                                    **Case No.: 8:20-cv-476-T-27AEP**
                                          **Criminal Case No.: 8:18-cr-146-T-27AEP**

UNITED STATES OF AMERICA,

     Respondent.

_____/

## ORDER

**BEFORE THE COURT** are Petitioner Howell's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (cv Dkt. 3), his Memorandum of Law in Support (cv Dkt. 4), the United States' Response (cv Dkt. 10), and Howell's Reply (cv Dkt. 13), Amended Reply (cv Dkt. 14), and Motion to Appoint Counsel (cv Dkt. 9). Upon review, the § 2255 motion is **GRANTED in part** and **DENIED in part**. The motion to appoint counsel is **DENIED**.

## BACKGROUND

In 2018, Howell was indicted and charged with seven counts of theft of government property in violation of 18 U.S.C. §§ 641 and 2, nine counts of aggravated identity theft in violation of 18 U.S.C. §§ 1028A(a)(1) and 2, one count of conspiracy to commit access device fraud and aggravated identity theft in violation of 18 U.S.C. § 371, and seven counts of access device fraud in violation of 18 U.S.C. §§ 1029(a)(1), (b)(1), (c)(1)(A)(i), and 2. (cr Dkt. 1). Pursuant to a written plea agreement, he pleaded guilty to Counts One (theft of government property) and Eight (aggravated identity theft), and the remaining counts were dismissed. (cr Dkts. 18, 36, 50).

1

The factual basis of the plea agreement, as stipulated to by Howell during his change of plea hearing, reflected that he was a senior member in an organization called the "Manche Boy Mafia" and he and other individuals in the organization obtained fraudulent tax returns and used related cards for ATM withdrawals and purchases. (cr Dkt. 18 at 20-23; cr Dkt. 50 at 34-39). Howell and the other individuals also purchased stolen credit and debit account numbers and created counterfeit cards by embossing the account information and their names on altered gift cards. (cr Dkt. 18 at 23-25). They made purchases with the counterfeit cards. (Id. at 24). The plea agreement further provided that "the United States estimates and [Howell] agrees that for the purposes of his U.S. Sentencing Guidelines, his intended loss is at least $2,065,366.06." (Id. at 25).

During his change of plea hearing, Howell confirmed that he had an opportunity to review the evidence in the case and the plea agreement with his attorney, that his attorney had done everything for him that he had asked, and that he was fully satisfied with his attorney's advice and representation. (cr Dkt. 50 at 12, 15). Howell acknowledged that no one had forced or threatened him into pleading guilty and that by pleading guilty he was giving up certain civil and constitutional rights, including the right to a jury trial. (Id. at 25-26, 31-33). When the Magistrate Judge questioned Howell about the option of trial, his counsel stated "there are certain amounts that are set forth which would be the amount of loss at issue in the case. . . . And I think that's the only reservation he has about the plea agreement." (Id. at 13). After the United States informed the Magistrate Judge that the plea agreement was contingent upon an admission to the amount of loss, a recess was taken to provide the parties time to discuss the issue. (Id. at 13-14). After the

recess, Howell confirmed that he had no questions and proceeded with the change of plea. (Id. at 14).

The Magistrate Judge explained to Howell the elements of and maximum sentences on Counts One and Eight. (Id. at 6, 16-18, 26-27, 31-34). It was further explained that no one could assure Howell of his guidelines range, which would be determined by the sentencing judge after preparation of the presentence investigation report (PSR). (Id. at 20-22, 29-31). Howell confirmed that, subject to some exceptions, he was waiving his right to appeal in his plea agreement.[1] (Id. at 24-25). His plea was accepted as knowing, intelligent, and voluntary, and he was adjudicated guilty. (Id. at 41; cr Dkt. 27).

The PSR scored Howell's base offense level as 6, with the following enhancements: 16 levels based on a loss of $2,065,366.06, which is more than $1,500,000 but less than $3,500,000 (U.S.S.G. § 2B1.1(b)(1)(I)); 2 levels for ten or more victims (§ 2B1.1(b)(2)(A)); 2 levels for the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification (§ 2B1.1(b)(11)(C)(i)); and 2 levels for the use of any device making equipment (§ 2B1.1(b)(11)(A)(i)). (cr Dkt. 32 ¶¶ 58-62). The PSR applied a 3-level reduction

---

[1] The plea agreement included a "Waiver of Right to Appeal the Sentence" in which Howell agreed

> that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal [his] sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds [his] applicable guidelines range *as determined by the Court* pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed . . . then [he] is released from his waiver and may appeal the sentence . . . .

(cr Dkt. 18 at 17-18 (emphasis in original)).

3

based on acceptance of responsibility. (Id. ¶¶ 68-69). With a total offense level 25 and a criminal history category VI, Howell faced a guidelines range of 110 to 120 months on Count One and a mandatory consecutive term of two years on Count Eight. (Id. ¶¶ 70, 125, 183, 185).

At sentencing, there were no unresolved objections to the PSR or the application of the guidelines. (Id. at 51; cr Dkt. 46 at 3-4). Howell was sentenced to 110 months on Count One and a consecutive term of 24 months on Count Eight, followed by concurrent terms of three years of supervised release on Count One and one year on Count Eight. (Id. at 21-22; cr Dkt. 36). He was ordered to pay $292,062.28 in restitution. (cv Dkt. 46 at 22). Howell's direct appeal was dismissed pursuant to the appeal waiver in his plea agreement. (cr Dkts. 38, 53).

In his § 2255 motion, he raises three claims relating to ineffective assistance of counsel and various sentencing issues. (cv Dkts. 3, 4). The United States concedes that Howell is entitled to relief in part on one of his claims, warranting a reduced sentence on Count One, and correctly contends that his remaining claims are without merit. (cv Dkt. 10).[2]

---

[2] In its response, the United States includes an affidavit from Howell's counsel. (cv Dkt. 10-1). To the extent his averments are refuted by Howell's allegations, it is unnecessary to rely on the affidavit to resolve the motion, and an evidentiary hearing is not required because the § 2255 motion "and the files and records of the case conclusively show that [Howell] is entitled to no relief." 28 U.S.C. § 2255(b).

Howell also filed a reply, amended reply, and an amended response to counsel's affidavit, essentially rearguing his contentions. (cv Dkts. 13, 14, 15). This Court is mindful of its responsibility to address and resolve all claims raised in his motion. *Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992) (instructing "the district courts to resolve all claims for relief raised in a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254"). That said, nothing in *Clisby* requires or suggests consideration of a claim raised for the first time in a reply.

In his filings, Howell raises several contentions unrelated to the claims in his § 2255 motion, but none entitle him to relief. For example, he claims that the United States breached the plea agreement. (cv Dkt. 4 at 8). However, he fails to adequately identify a breach, none is apparent from the record, and, in any event, relief is unavailable. As specified in the plea agreement and explained at sentencing, the decision to file a motion to reduce Howell's sentence based on substantial assistance was subject to the United States' discretion and contingent on useful information. (cr Dkt. 46 at 18-20; cr Dkt. 18 at 6). Howell also contends that his "sentence was three days before the First Step Act. Howell's attorney failed to ask the courts for a continuance to at least get the benefits of the First Step Act." (cv Dkt. 4 at 10). However, he does not specify how the First Step Act would have affected his sentence and, in any event, fails to demonstrate deficient performance or prejudice. And he does not support his contention that the United States was

## STANDARD

To establish ineffective assistance of counsel, Howell must demonstrate that (1) counsel's performance was constitutionally deficient, and (2) he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. And "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (citation and internal quotation marks omitted).

The *Strickland* test also applies to challenges of guilty pleas. *See Scott v. United States*, 325 F. App'x 822, 824 (11th Cir. 2009). The Eleventh Circuit explains:

> In this context, the first prong of *Strickland* requires the defendant to show his plea was not voluntary because he received advice from counsel that was not within the range of competence demanded of attorneys in criminal cases. The second prong focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process, meaning

---

required to include the guidelines enhancements in his indictment. (Id.). And to the extent he claims his sentence violates the Eighth Amendment, the claim is without merit since he received a sentence at the low end of the guidelines. *United States v. Johnson*, 451 F.3d 1239, 1243 (11th Cir. 2006) ("[A] sentence within the statutory limits generally does not violate the Eighth Amendment . . . .").

In his amended response to counsel's affidavit, which was filed without leave of court, Howell further claims that on counsel's advice, he made incriminating statements to law enforcement in an effort to obtain bond. (cv Dkt. 15 at 2; cv Dkt. 6 at 2). To the extent he raises an ineffective assistance of counsel claim, he did not properly raise it in his § 2255 motion, and in any event, claims of pre-plea ineffective assistance of counsel were waived by his guilty plea. *See Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992); *Franklin v. United States*, 589 F.2d 192, 194-95 (5th Cir. 1979). His motion for the bond transcript is accordingly denied. (cv Dkt. 15 at 6). Further, he does not specify the nature of the "motion for evidence" he requested counsel to file. (Id. at 3). At the change of plea hearing he nonetheless confirmed that he had an opportunity to "review all the facts and evidence in [his] case," and that counsel had "done everything for [him] that [he] asked [counsel] to do." (cr Dkt. 50 at 12).

the defendant must show a reasonable probability that, but for counsel's errors, he would have entered a different plea.

*Id.* (internal quotation marks and citations omitted); *Lafler v. Cooper*, 566 U.S. 156 (2012).

Notably, "counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial," and "need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). Counsel must make an "independent examination of the facts, circumstances, pleadings and laws involved, [and] offer his informed opinion as to the best course to be followed in protecting the interests of the client." *Id.* Collateral relief is only available if a petitioner "prove[s] serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act." *Lopez v. Reid*, No. 2:14-CV-584-FtM-38-MRM, 2017 WL 2869405, at *2 (M.D. Fla. July 5, 2017) (quoting *McMann v. Richardson*, 397 U.S. 759, 774 (1970)).

## DISCUSSION

In summary, Howell has established that counsel was ineffective in failing to challenge the § 2B1.1(b)(11)(C)(i) enhancement. Accordingly, his sentence on Count One is due to be vacated and a new sentence at the low end of the corrected guidelines range imposed. Absent a showing of deficient performance or resulting prejudice, his remaining ineffective assistance of counsel claims, including those relating to the validity of his guilty plea, fail. And his sentencing claims raised independent of his ineffective assistance of counsel claims are not cognizable and are, in any event, without merit. Because an evidentiary hearing is unnecessary to resolve his claims, his motion to appoint counsel is due to be denied.

***Ground One***

In Ground One, Howell claims "ineffective counsel for resulting in a unknowingly involuntary and unintelligent guilty plea." (cv Dkt. 3 at 4). In support, he asserts:

1. Counsel failure to argue all enhancements
2. Counsel failure to argue the money amount
3. Counsel failure to argue the victims amount
4. Counsel failure to argue and explain the elements of the crime and where the defendant would be on the guidelines
5. Counsel failure to object or argue double jeopardy enhancements
6. Counsel failure to object to restitution
7. Counsel failure to conduct an effective investigation before convincing him to enter a guilty plea also knowing the consequence of his guilty plea.

(Id.). Elsewhere in his filings, Howell raises these claims of ineffective assistance of counsel independent of his challenge to the validity of his guilty plea.

Howell's claim that ineffective assistance of counsel rendered his guilty plea invalid is without merit. Notwithstanding his assertions, his Rule 11 colloquy belies his claim that his guilty plea was not entered knowingly, intelligently, and voluntarily. (cr Dkt. 50). Indeed, "[t]here is a strong presumption that statements made during the plea colloquy are true," and Howell "bears a heavy burden to show that his statements under oath were false." *Patel v. United States*, 252 F. App'x 970, 975 (11th Cir. 2007) (citations omitted). His plea colloquy satisfied the requirements of Rule 11 of the Federal Rules of Criminal Procedure,[3] and Howell did not object to the Magistrate

---

[3] Rule 11 "imposes upon a district court the obligation and responsibility to conduct an inquiry into whether the defendant makes a knowing and voluntary guilty plea" by addressing three core concerns: (1) the guilty plea must be free of coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea. *United States v. Gandy*, 710 F.3d 1234, 1240 (11th Cir. 2013) (citations omitted).

Howell "argues that his plea agreement was involuntary and unintelligent due to ineffective assistance of counsel, counsel forced defendant to sign a[n] appeal waiver which that waiver prohibited Howell from appealing or collaterally attacking his sentence." (cv Dkt. 4 at 2, 5-6). However, the appeal waiver did not prohibit him from collaterally attacking his sentence. (cv Dkt. 18 at 17-18). Additionally, his claim is without merit since he agreed to

Judge's Report and Recommendation concerning his guilty plea. *See United States v. Barefoot*, 342 F. App'x 480, 484 (11th Cir. 2009) (finding argument that guilty plea was not entered intelligently and knowingly waived because of failure to object to report and recommendation).

Although Howell asserts that he would not have pleaded guilty absent ineffective assistance of counsel, the factual basis in his plea agreement and his Rule 11 colloquy contradict that assertion. Indeed, when asked about the possibility of trial, Howell explained, "I ain't trying to go to trial and have my sentence worse than what it could possibly already be." (cr Dkt. 50 at 13).[4] Moreover, he received a substantial benefit by entering into the plea agreement. The United

---

that provision knowingly and voluntarily in his plea agreement and acknowledged the effect of his appeal waiver during his change of plea hearing. There is no indication that he misunderstood or objected to it. (cr Dkt. 50 at 25; cr Dkt. 18 at 17-18); *see United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008) ("The waiver is valid if the government shows either that: (1) the district court specifically questioned the defendant about the waiver; or (2) the record makes clear that the defendant otherwise understood the full significance of the waiver."); *see also United States v. Lagrone*, 727 F.2d 1037, 1038 (11th Cir. 1984) ("When a defendant pleads guilty relying upon his counsel's best professional judgment, he cannot later argue that his plea was due to coercion by counsel.").

[4] Howell's concern of receiving a longer sentence had he proceeded to trial is further supported by averments in counsel's affidavit. He avers that Howell "advised that he did not want to proceed to trial because the evidence of guilt was overwhelming. Further [Howell] had (what he considered) substantial assistance to offer the Government in the hopes of a significant reduction of sentence. It was additionally explained to [him] that no cooperation would be permitted unless a Plea Agreement was executed which contained an appeal waiver provision." (cv Dkt. 10-1 at 1-2). Indeed, as Howell explained at sentencing,

> I pled guilty due to they said anything I that said wouldn't be used -- I wouldn't get credit for because if I don't plead guilty, that mean I'm not trying to get substantial assistance. That's why I pled guilty. I would have never pled guilty to something if I knew that I was going to cooperate, I wouldn't get any credit for it.

(cr Dkt. 46 at 21). He further discussed at length his efforts to cooperate. (Id. at 15-18). To the extent counsel's averments are contradicted by Howell's allegations, it is unnecessary to rely on the affidavit to resolve the motion.

Additionally, in his amended response to counsel's affidavit, Howell asserts that by challenging the amount of loss in the plea agreement, he was hoping the Magistrate Judge would reject his change of plea. (cv Dkt. 15 at 4). As discussed, counsel raised Howell's concerns about the loss amount, and the Magistrate Judge allowed the parties time to discuss the issue. (cr Dkt. 50 at 13-14). After the recess, Howell confirmed that he had no questions and proceeded with the plea. (Id. at 14). Howell's concerns with the loss amount were therefore noted, and he decided to continue with the Rule 11 colloquy.

Finally, although Howell asserts that he subsequently informed counsel that he wanted to withdraw his guilty plea, he did not persist in pursuing a motion. (cv Dkt. 15 at 5). He did not mention any related concerns at sentencing.

States agreed to move to dismiss the remaining twenty-two counts in his Indictment, recommend a sentence within the guidelines range, and not bring additional charges. (cr Dkt. 18 at 3-4). The agreement further allowed for a three-level reduction for acceptance of responsibility and the possibility of a sentence reduction based on substantial assistance. (Id. at 4-6).

In sum, he does not demonstrate that ineffective assistance of counsel rendered his guilty plea unknowing, unintelligent, or involuntary, or that he suffered resulting prejudice. His remaining claims will be addressed in turn.

1. § 2B1.1(b)(11)(C)(i) and § 2B1.1(b)(11)(A)(i)

The United States concedes that Howell has established ineffective assistance of counsel as to counsel's failure to challenge the § 2B1.1(b)(11)(C)(i) enhancement. An attorney's failure to identify a guidelines error that results in a different range may constitute deficient performance. *See Griffith v. United States*, 871 F.3d 1321, 1339 (11th Cir. 2017). And "[w]hen a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016). Where "the record is silent as to what the district court might have done had it considered the correct Guidelines range, the court's reliance on an incorrect range in most instances will suffice to show an effect on the defendant's substantial rights." *Id.* at 1347.

Howell was assessed a 2-level enhancement based on the unauthorized transfer or use of

---

And it is not clear that any such motion would have been successful, since Howell had stipulated to the loss amount in the plea agreement and at the change of plea hearing. *See, e.g., United States v. Lee*, 191 F. App'x 881, 882-83 (11th Cir. 2006) (affirming denial of motion to withdraw guilty plea where application of sentencing enhancement was provided in plea agreement and at change of plea hearing); *see also United States v. Garcia*, 213 F. App'x 817, 820 (11th Cir. 2007) ("[T]he erroneous predictions by his counsel and the government as to [the defendant's] guidelines calculations do not provide a 'fair and just reason' for withdrawing [his] plea.").

any means of identification unlawfully to produce or obtain any other means of identification under § 2B1.1(b)(11)(C)(i). (cr Dkt. 32 ¶ 61). However, as the United States concedes, when a defendant is convicted of aggravated identity theft, the application notes to § 2B1.6 proscribe Chapter Two enhancements for "any specific offense characteristic for the transfer, possession, or use of a means of identification." (cv Dkt. 10 at 9-10; cv Dkt. 10-1 at 4); U.S.S.G. § 2B1.6, cmt. n.2; *United States v. Devlin*, 769 F. App'x. 709, 713-14 (11th Cir. 2019). Because Howell was convicted of aggravated identity theft, the § 2B1.1(b)(11)(C)(i) enhancement should not have been applied.

The United States correctly points out that it recommended the low end of the guidelines range and that the "record does not establish that Howell would have received the same sentence regardless of the guidelines." (cv Dkt. 10 at 11; cr Dkt. 46 at 7). On Count One, a sentence of 110 months was imposed, "consistent with the low-end recommendation of the government." (cv Dkt. 46 at 21); *see Bates v. United States*, 649 F. App'x 971, 976 (11th Cir. 2016) (finding a reasonable probability that court would have imposed different sentence where it decided to impose low-end sentence). Without the 2-level enhancement, Howell's guidelines range would have been 92-115 months. Accordingly, the United States agrees that a new sentence of 92 months be imposed on Count One, the low-end of this range. (cv Dkt. 10 at 17-18).

No hearing is necessary. As the Eleventh Circuit has explained, to determine whether a resentencing hearing is necessary after a § 2255 motion is granted, courts ask

> First, did the errors requiring the grant of habeas relief undermine the sentence as a whole?; and Second, will the sentencing court exercise significant discretion in modifying the defendant's sentence, perhaps on questions the court was not called upon to consider at the original sentencing? . . . When these factors are present, a sentence modification qualifies as a critical stage of the proceedings, and a resentencing hearing with the defendant present is required.

10

> As for the first inquiry, a resentencing hearing may be required if there is a chance that an erroneous sentence on one count of conviction influenced the sentencing judge's decisions on other counts. . . . As for the second inquiry, a resentencing hearing may be necessary when a court must exercise its discretion in modifying a sentence in ways it was not called upon to do at the initial sentencing.

*United States v. Hernandez*, 735 F. App'x 998, 1000-01 (11th Cir. 2018) (internal quotation marks, citations, and brackets omitted).

Here, the error did not undermine the sentence as a whole. Indeed, the application of the 2-level enhancement did not invalidate Howell's convictions, and it resulted in a higher guidelines range on only Count One. The sentence on Count Eight is mandated by statute and unaffected by this claim of ineffective assistance of counsel. Second, the sentencing court will not exercise significant discretion in modifying the sentence. Although correction of the error results in a new guidelines range, the corrected range of 92-115 months overlaps with the prior guidelines range of 110-120 months. And consistent with the plea agreement and the United States' recommendation, it was the intent of this Court that a sentence at the low end of the guidelines on Count One would be imposed.

Further, Howell fails to identify any "issues pertinent to his sentence" for which a resentencing hearing would be his "first opportunity to meaningfully address." *Hernandez*, 735 F. App'x at 1001. Unlike the sentencing at issue in *United States v. Brown*, 879 F.3d 1231, 1240 (11th Cir. 2018), the § 3553(a) factors were addressed at Howell's sentencing, (cr Dkt. 46 at 12-15, 21), and he does not suggest any additional considerations that need to be addressed at a hearing. Moreover, since the remaining enhancements were properly applied, there are no "guideline application issues" to determine. *See Hernandez*, 735 F. App'x at 1001-02 (finding no

hearing necessary where error did not affect consecutive sentence on additional count, record reflected "that the court decided a sentence at the low end of the guideline range was appropriate in light of the § 3553(a) factors," and defendant "has not identified any issues he was unable to meaningfully challenge during his original sentencing due to the . . . error"); *see also United States v. Thomason*, 940 F.3d 1166, 1172 (11th Cir. 2019) ("[W]hen the district court vacates a single count in a multi-count conviction, it has the discretion to determine whether it needs to conduct a full resentencing to ensure that the sentence remains sufficient, but not greater than necessary, to comply with the purposes of sentencing in section 3553(a)." (internal quotation marks, citations, and brackets omitted)).

Accordingly, considering the corrected guidelines range and the § 3553(a) factors, a term of 92 months imprisonment on Count One is appropriate. The 24-month consecutive term on Count Eight remains, to be followed by concurrent terms of three years of supervised release on Count One and one year of supervised release on Count Eight.

By contrast, Howell's claim that counsel was ineffective in failing to object to the § 2B1.1(b)(11)(A)(i) enhancement is without merit. That enhancement is not proscribed by § 2B1.6. *See United States v. Taylor*, 818 F.3d 671, 675 (11th Cir. 2016) ("We have directly applied this principle to subsection (A) of § 2B1.1(b)(11), holding that use of device-making equipment is conduct different than the transfer, possession, or use of a means of identification covered under § 1028A."). Howell does not identify any basis to prohibit the application of this enhancement, which was supported by the factual basis in the plea agreement and PSR. Indeed, Howell's offense involved the use of credit card embossers to create fraudulent credit cards. (cr Dkt. 32 ¶ 35; cr Dkt. 50 at 38). Because the enhancement was properly applied, Howell is unable to show that counsel's

performance was deficient, that he suffered resulting prejudice, or that counsel was ineffective. *Freeman v. Attorney General, State of Florida*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim.").

2. Loss Amount

Howell's contention that counsel was ineffective in failing to challenge the 16-level enhancement under § 2B1.1(b)(1)(I) based on a loss amount of $2,065,366.06 is without merit. (cr Dkt. 32 ¶ 59). "[L]oss is the greater of actual loss or intended loss," and intended loss is "the pecuniary harm that the defendant purposely sought to inflict," including "harm that would have been impossible or unlikely to occur" and reasonably foreseeable losses caused by coconspirators. U.S.S.G. § 2B1.1, cmt. n.3(A); *United States. v. Mateos*, 623 F.3d 1350, 1371 (11th Cir. 2010). "The court need only make a reasonable estimate of the loss." § 2B1.1, cmt. n. 3(C).

Contrary to Howell's conclusory assertion that the loss amount was based on speculation, the stipulated factual basis in his plea agreement describes the scheme and amounts deposited into his account from the fraudulent tax returns. (cv Dkt. 4 at 11; cr Dkt. 18 at 20-25). And the PSR itemized the loss amount and identified instances of Howell using fraudulent credit cards. (cr Dkt. 32 ¶¶ 16-52). Moreover, Howell agreed to the loss amount when he pleaded guilty. (cr Dkt. 50 at 14, 39). Finally, he incorrectly asserts that loss must be based on the amount he obtained and determined by a jury. (cv Dkt. 4 at 11; cv Dkt. 13 at 3). Each of his contentions are without merit. It follows that his attorney was not ineffective in failing to raise these meritless arguments. In the absence of deficient performance or resulting prejudice, this claim is due to be denied.[5]

---

[5] Counsel avers that he "thoroughly explained to [Howell] the differences between actual loss and intended loss and how those amounts would impact loss calculations, how loss calculations were fluid and that the Government could discover during the course of his case (and its continuing investigation) additional loss amounts and how those

3.  Number of Victims

Howell's contention that counsel was ineffective in failing to challenge the 2-level enhancement for ten or more victims is likewise without merit. § 2B1.1(b)(2)(A)(i); (cr Dkt. 32 ¶ 60). He appears to contend that only Wal-Mart and Rural King are victims for purposes of the enhancement or, alternatively, that they do not constitute victims because they are not humans. (cv Dkt. 14 at 2). These contentions are without merit. When the offense involves a means of identification, a "victim" is "any individual whose means of identification was used unlawfully or without authority." §2B1.1, cmt. n.4(E). This includes deceased individuals. *See United States v. Philidor*, 717 F.3d 883, 886 (11th Cir. 2013). And "means of identification" includes an account number. 18 U.S.C. §§ 1028(d)(7)(D), 1029(e)(1); § 2B1.1, cmt. n.1.

The undisputed facts in the PSR reflect that Howell's offense involved the unlawful use of means of identification of more than ten individuals to create fraudulent credit cards. (cr Dkt. 32 ¶ 60). And the stipulated factual basis in his plea agreement describes seven fraudulently obtained tax refunds loaded onto Howell's account, including tax returns that used multiple stolen identities. (cr Dkt. 18 at 21; cr Dkt. 32 ¶¶ 19-25). Finally, Howell provides no authority supporting his contention that § 2B1.6 precludes application of the enhancement in his case. (cv Dkt. 14 at 4).[6] Accordingly, an objection to this enhancement would have been without merit, and counsel was

---

loss amounts could understate or overstate [his] criminal liability in the eyes of the Court, and how [he] and his co-conspirators would be held jointly and severally liable for those losses and how all money illegally obtained or items purchased with illegal proceeds were all subject to forfeiture." (cv Dkt. 10-1 at 4). To the extent these averments are contradicted by Howell's allegations, it is unnecessary to rely on the affidavit to resolve the motion.

[6] This argument was raised in Howell's direct appeal. As counsel noted, however, the Eleventh Circuit has found that § 2B1.6 "does not prohibit a sentence enhancement for the number of victims under Section 2B1.1(b)(2)." *United States v. Howell*, 2019 WL 1385433, at *12 (11th Cir. Mar. 19, 2019) (quoting *United States v. Ford*, 784 F.3d 1386, 1397-98 (11th Cir. 2015)).

not ineffective in failing to object. In sum, Howell fails to establish that counsel's performance was deficient or that he suffered prejudice resulting from the alleged deficient performance.

4. <u>Failure to Explain Elements of the Crime and Applicable Guidelines</u>

Howell's contention that counsel was ineffective in failing to explain the elements of the crime and his predicted guidelines range is likewise without merit. (cv Dkt. 4 at 3). He contends:

> In plea transcript, Howell asked the lawyer how much money that the government was charging him with, NO ONE including Howell's attorney didn't explain where would he be on the Guidelines. Howell asked questions about the money amount and he did not understand where he would be or facing. Howell's attorney told him he would get him 90 months and he had already talked to the government and for Howell to just say yes to all the Judge's questions.

(Id. at 4). The record belies these contentions.[7]

Howell's plea agreement set forth the elements of the offenses charged in Counts One and Eight. (cr Dkt. 18 at 2-3). During his Rule 11 colloquy, he confirmed he reviewed the plea agreement with counsel. (cr Dkt. 50 at 15). And the elements were explained to him by the Magistrate Judge during his change of plea colloquy. (Id. at 33-34). Howell acknowledged that he "underst[ood] what the Government would have to prove in order to establish [his] guilt for Counts I and VIII of the indictment." (Id. at 34). In light of this record, Howell fails to explain how he

---

[7] The United States contends that this claim, among others, was waived by Howell's appeal waiver. (cv Dkt. 10 at 15). However, that waiver did not preclude ineffective assistance of counsel claims raised in collateral proceedings. But by pleading guilty, he waived all claims of pre-plea ineffective assistance of counsel which did not undermine the knowing and voluntary nature of his plea.

Additionally, counsel avers that the "elements of the offense were explained to [Howell] shortly after undersigned was retained, then again while reviewing the plea agreement (where they are set forth) and again by the Magistrate Judge during the Court's colloquy with [Howell]." (cv Dkt. 10-1 at 2). To the extent this is contradicted by Howell's allegations, it is unnecessary to rely on the affidavit to resolve the motion, since the Rule 11 colloquy belies his contentions.

could have been confused about the elements. Even if counsel failed to correctly explain the elements to him, the Magistrate Judge's plea colloquy cured any such error.

Howell's contention that, prior to his change of plea hearing, counsel failed to predict the application of the guidelines and promised a sentence of 90 months is likewise without merit.[8] This Circuit has made it clear that counsel's failure to adequately predict a defendant's ultimate sentence does not render a guilty plea unknowing or involuntary when the defendant is properly advised of the maximum penalties by the court. *See, e.g.*, *United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (rejecting claim of ineffective assistance of counsel); *see also Johnson v. Massey*, 516 F.2d 1001, 1992 (5th Cir. 1975). And Howell's plea colloquy belies his contention that he was promised a particular sentence. (cv Dkt. 50 at 25-26).[9]

During his Rule 11 colloquy, Howell confirmed that he was satisfied with counsel's representation and that he understood no one was able to accurately predict his guidelines range. (Id. at 12, 22). When he noted that he did not "understand[] what range [he's] in as of right now,"

---

[8] Counsel avers that he "went over a preliminary estimate of the guideline range with [Howell] shortly after being retained, and again prior to the change of Plea hearing. Undersigned never advised [him] that he would receive any specific sentence of 90 months or otherwise. . . . Undersigned *never* told [him] to answer all questions 'yes' at his Change of Plea hearing. [Howell] was advised to answer all questions, honestly given that he would be under oath." (cv Dkt. 10-1 at 2-3). To the extent these averments are contradicted by Howell's allegations, it is unnecessary to rely on the affidavit to resolve the motion, considering Howell's plea colloquy.

[9] In addition to Howell confirming during the Rule 11 colloquy that "[o]ther than what's in the plea agreement," no one "promised [Howell] anything else of value in order to induce [him] to plea[d] guilty," the plea agreement further reflects that there were no promises of a particular sentence. (cr Dkt. 50 at 25-26). Indeed, in the agreement Howell acknowledged he "is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and [him] and [his] attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind." (cr Dkt. 18 at 19). The agreement further provided that it "constitutes the entire agreement between the government and [Howell] with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to [Howell] or [his] attorney with regard to such guilty plea." (Id. at 25). Accordingly, the record belies Howell's contention that counsel promised him a particular sentence based on discussions counsel purportedly had with the United States. (cv Dkt. 4 at 4).

the Magistrate Judge explained

> it's important you understand . . . no one can tell you -- and that includes
> [counsel] or anyone else -- no one is in a position where they can advise
> what your advisory guideline range or your sentence . . . will be. Now, this
> cannot be done for a number of reasons. And one specific reason is because
> the United States Probation Office has to prepare an important document
> called a [PSR]. Now, this is very important to you because the Court is
> going to use that report as an aid to determine your sentence.
> . . .
> [I]t's very important you understand that no one, no one can tell you with
> any certainty what your advisory guideline range or sentence will be. Now,
> it's perfectly acceptable that you probably have discussed the matter with
> [counsel] and maybe have attempted to estimate, after talking with him, a
> potential guideline range or a sentence for your case. But, again, let me
> emphasize for you that your estimation could be wrong. And if it is wrong,
> you cannot later complain and ask to withdraw from the plea of guilt.
>
> Do you understand that?

(Id. at 20-22). Howell responded, "Yes, sir." (Id. at 22).

Later in the colloquy, Howell confirmed that he had discussed the advisory guidelines "and
how they might apply in [his] case" with counsel, and the Magistrate Judge reminded him that "no
one can tell you with any certainty what your advisory guideline range will be." (Id. at 29). Howell
asked whether he could perform his own estimation of the guideline as to loss, and the Magistrate
Judge again explained:

> You certainly can do that. But what, again, I need you to understand is, it
> doesn't matter who does the estimate or who's advising you, to include
> [counsel], what you have to understand is, in the end, whatever your
> estimation, may be wrong, it doesn't mean that's what the judge is going to
> agree to. . . . [N]o one can tell you what your sentence is going to be. And
> what you have to understand is even if your estimation is done as accurate
> as possible and you think it's correct, it can be wrong. And if it's wrong,
> you cannot later complain and ask to withdraw from the plea of guilt.

(Id. at 30). When asked whether he understood, Howell responded "Yes, sir." (Id. at 30). Howell's
statements demonstrate his understanding of the Court's discretion at sentencing and that the

guidelines could not be determined until after the PSR was prepared.[10] As noted, there is a "strong presumption" that these statements, made under oath, are true. *Patel*, 252 F. App'x at 975. And Howell's contention that counsel promised a specific sentence is likewise belied by his change of plea colloquy. (cr Dkt. 50 at 25-26).

Accordingly, even if counsel erroneously predicted his guidelines range or ultimate sentence, in light of his Rule 11 colloquy, Howell fails to demonstrate that he suffered any resulting prejudice. And due to his concerns about a longer sentence and his desire to cooperate, the record belies his assertion that he would have maintained his plea of not guilty and proceeded to trial. In sum, in the absence of deficient performance or prejudice, Howell does not demonstrate ineffective assistance of counsel on this contention.

5. Double Jeopardy Enhancements

Howell's contention that counsel was ineffective in failing to object to enhancements purportedly in violation of the double jeopardy clause is without merit. First, his convictions do not violate double jeopardy. "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or

---

[10] Howell's plea agreement further reflects his understanding. The agreement included a provision titled "Sentencing Recommendations," which provided that

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the [PSR] prepared by the United States Probation Office. [Howell] understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. [He] further understands and acknowledges that any discussions between [him] and [his] and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, [he] will not be permitted to withdraw [his] plea pursuant to this plea agreement.

(cr Dkt. 18 at 17).

only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Theft of government property and aggravated identity theft both require proof of at least one element that the other does not. *See* 11th Cir. Pattern Jury Instructions O21 and O40.3. To the extent Howell argues that the sentencing enhancements constituted impermissible double counting, he fails to identify which "part of the Guidelines [was] applied to increase [his] punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." *United States v. Reilly*, 760 F. App'x 860, 863 (11th Cir. 2019). And his claims relating to the effect of § 2B1.6 have been addressed. (cv Dkt. 4 at 4-8). In sum, Howell is not entitled to relief on this claim because counsel could not have been ineffective in failing to raise a meritless objection.

6. Restitution

Howell's claim that counsel was ineffective in failing to challenge the restitution amount is likewise without merit. First, as the United States observes, claims relating to restitution are not cognizable in § 2255 proceedings. (cv Dkt. 10 at 7-8); *see Mamone v. United States*, 559 F.3d 1209, 1210-11 (11th Cir. 2009). And in any event, Howell's plea agreement estimated restitution to be $140,437.17 payable to the United States Treasury but stipulated that the Court would determine the final restitution amount. (cr Dkt. 18 at 3). The factual basis in the plea agreement also included an additional $151,625.11 in actual loss based on the credit card fraud. (cr Dkt. 18 at 25). During his change of plea hearing, Howell acknowledged that the Court would make the final determination of restitution. (cr Dkt. 50 at 28). In accord with these stipulated and undisputed amounts, which were outlined in the PSR, Howell was ordered to pay "$140,437.17 to IRS, and $151,625.11 due to Rural King and/or WalMart." (cr Dkt. 46 at 22; cr Dkt. 32 ¶¶ 17-46). And it is

of no consequence that, as Howell observes, the amount of restitution was lower than the amount of loss. (cv Dkt. 13 at 3). In sum, the record supported the restitution amount, and there was no basis on which to object to it. Counsel was not ineffective in failing to raise a meritless objection, and this claim of ineffective assistance is due to be denied.

    7.  <u>Failure to Conduct an Effective Investigation</u>

Howell's claim that counsel was ineffective in failing to conduct an effective investigation is without merit. First, as noted, by pleading guilty he waived claims of pre-plea ineffective assistance of counsel. Second, the stipulated facts supported the crimes of conviction, and Howell does not identify in what way counsel's investigation was ineffective, or why, had counsel conducted an "effective investigation," he would have decided to not plead guilty and proceed to trial. Finally, given the circumstances, specifically Howell's decision to plead guilty pursuant to a beneficial plea agreement, counsel was not ineffective in failing to conduct a more thorough investigation.[11]  Accordingly, Howell fails to show deficient performance or resulting prejudice from the claimed deficient performance.

**Ground Two**

In Ground Two, Howell claims "abuse of discretion / ineffective counsel." (cv Dkt. 3 at 5).

---

[11] As the Supreme Court explains:

> Strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Wiggins v. Smith*, 539 U.S. 510, 521-22 (2003).

He argues "1. . . . the sentence is substantively unreasonable on the grounds that the district court misstated the importance of the loss amount in determining the sentence and relied on unsubstantiated facts that were not sufficiently particularized," and "2. Courts abuse it discretion for following improper procedures in setting a sentence." (Id.). These contentions are without merit.

First, Howell's claims that relate to his sentence, independent of his ineffective assistance of counsel claims, are not cognizable and do not constitute a constitutional violation entitling him to relief in this collateral proceeding. *See Spencer v. United States*, 773 F.3d 1132, 1139 (11th Cir. 2014). And turning to his first contention, he does not specify whether counsel at sentencing or appellate counsel was ineffective in failing to challenge the substantive reasonableness of his sentence. In either event, the claim fails.

At sentencing, counsel requested a sentence of 90 months based on the sentences received by other defendants, Howell's acceptance of responsibility, and his efforts to cooperate with the United States. (cr Dkt. 46 at 4-5). This Court acknowledged the § 3553(a) factors and, in accord with the United States' recommendation, imposed a sentence at the low end of the guidelines range. (Id. at 7, 12, 21). Although the sentence may have been longer than those imposed on other defendants, as counsel acknowledged, Howell's extensive criminal history was "driving the guideline range in this case." (Id. at 5). Further, this Court noted that Howell was one of the "ring leaders of this crime spree," as supported by the record. (Id. at 20); *see, e.g.*, (cr Dkt. 18 at 21, 25 (noting that Howell was a "senior member" of the organization, had fraudulent tax return funds deposited into his personal account, and had stolen account information in his phone at the time of arrest)). And Howell fails to identify in the record where this Court "misstated the importance of

the loss amount in determining the sentence and relied on unsubstantiated facts that were not sufficiently particularized." (cv Dkt. 3 at 5).

Any challenge to the substantive reasonableness of Howell's low-end sentence would have been without merit, and counsel is not ineffective in failing to raise a meritless claim. *See Deonarinesingh v. United States*, 542 F. App'x 857, 864 (11th Cir. 2013) ("With such an exacting standard on review, any defendant challenging a sentence at the low end of the guidelines range is unlikely to be successful."). The claim was further barred by the appeal waiver, and "[a]ppellate counsel is not ineffective for failing to raise claims 'reasonably considered to be without merit.'" *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000).[12]

Finally, Howell fails to identify any improper procedures in the determination of his sentence. As noted, this Court confirmed there were no objections to the PSR, heard from Howell and his counsel, and imposed a low-end guidelines sentence based on the § 3553(a) factors. In the absence of a procedural error, there was nothing for counsel to challenge, and counsel was not ineffective in failing to raise a meritless claim. *See Lamons v. United States*, No. 4:03-CR-46-1, 2011 WL 13312045, at *6 (N.D. Ga. Mar. 8, 2011) (finding that where sentence fell within guidelines range and, "given the procedural and substantive reasonableness of [the] sentence, . . . [the petitioner] was not prejudiced by appellate counsel's failure to challenge his sentence on direct appeal"). Accordingly, Howell is not entitled to relief on Ground Two.

---

[12] Elsewhere in his filings, Howell asserts without support that appellate counsel was ineffective. (cv Dkt. 4 at 3). Such a conclusory assertion is insufficient to state a claim for relief. In any event, the record, specifically the appeal waiver, demonstrates that appellate counsel was not ineffective. Additionally, Howell provides no authority in support of his contention that his sentence constituted "a miscarriage of justice so as to support not enforcing" the appeal waiver. (Id. at 4).

***Ground Three***

In Ground Three, Howell claims "abuse of discretion / ineffective counsel" on the basis that "1. District court should not have applied enhancement based on the transfer or use of a means of identification under USSG 2B1.1(b)(11)(c)(1); 2. District should not have applied enhancement using a card in Boston. Government never prove a card was found or used by [Howell]; 3. All enhancements should have never been applied." (cv Dkt. 3 at 7). These contentions do not entitle Howell to relief. As with Ground Two, Howell's claims that relate to his sentence raised independent of his ineffective assistance of counsel claims are not cognizable and do not constitute a constitutional violation entitling him to relief. And his duplicative claims of ineffective assistance of counsel as to each sentencing enhancement, including § 2B1.1(b)(11)(c)(1), have been resolved.

Howell does not specify the basis for his claim that the Court "should not have applied enhancement using a card in Boston" and that the "Government never prove a card was found or used by [him]." (cv Dkt. 3 at 7). The claim is, in any event, without merit. No such card was addressed in the PSR or at sentencing. To the extent he argues that counsel should have objected to the application of the § 2B1.1(b)(11)(A)(i) enhancement based on an embossed card or an embosser, the plea agreement's factual basis, as stipulated to during the change of plea hearing, and the undisputed facts in his PSR, reflect that Howell's offense involved the use of an embosser to emboss stolen account numbers on the front of altered cards and that he used the altered cards. *See, e.g.*, (cr Dkt. 50 at 38-39; cr Dkt. 32 ¶¶ 35, 49, 62); *United States v. Spencer*, No. 19-11687, 2020 WL 2214107, at *6 (11th Cir. May 7, 2020) (noting that the enhancement applies if a defendant uses a device himself, "or if one was used (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in

23

connection with that criminal activity") (internal quotation marks and citation omitted). Accordingly, there was no basis on which to challenge the enhancement, and counsel is not ineffective in failing to raise a meritless claim. Howell is therefore not entitled to relief on Ground Three.

### Certificate of Appealability ("COA")

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right," which requires Howell to demonstrate "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); 28 U.S.C. § 2253(c)(2). I find that jurists of reason would not disagree with the resolution of Howell's constitutional claims or that the claims he raises are adequate to deserve encouragement to pursue an appeal. Because Howell cannot meet this standard, he is not entitled to a COA and cannot appeal *in forma pauperis*.

## CONCLUSION

Howell's motion to appoint counsel is **DENIED**. (cv Dkt. 9). His § 2255 motion is **GRANTED in part** and **DENIED in part**. (cv Dkt. 3). The motion is granted to the extent that, by separate judgment in criminal case 8:18-cr-146-T-27AEP, Howell's sentence on Count One will be vacated and a new sentence of 92 months followed by 3 years of supervised release will be imposed, with the remaining terms and the sentence on Count Eight unchanged. Howell's remaining claims are denied. The Clerk is directed to enter judgment accordingly, and to **CLOSE** this civil case.

**DONE AND ORDERED** this 13th day of July, 2020.

*/s/ James D. Whittemore*

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Petitioner, Counsel of Record

25